UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

APEX ENERGY GROUP, LLC,                                  Case No: 1:14-cv-621

        Plaintiff,                                                       Judge Michael R. Barrett

    v.

SHAWN McCAIN,

        Defendant.

## FINAL JUDGMENT AND ORDER

This matter came before the Court for a bench trial on September 25, 2014 on Plaintiff Energy Group, LLC's claims for (1) breach of contract by Defendant Shawn McCain as to the Salt Lake City market, and (2) a declaratory judgment under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 that Defendant Shawn McCain is bound by the non-competition covenants contained in Paragraph 3 of the Reorganization Agreement with respect to the Salt Lake City market.[1] Having heard the evidence and arguments of the parties, the Court hereby rules in favor of Plaintiff Apex Energy Group, LLC on both claims for the reasons set forth below.

**I.     FACTUAL BACKGROUND**

    **A.     The Reorg Agreement**

The parties previously were in business together, have separated, and now are bound by an Amended and Restated Agreement of Reorganization ("Reorg Agreement"), which forms the basis for this lawsuit.  (PX1).  The Reorg Agreement provides, among other things, for a detailed system for developing business in new markets to the exclusion of the other party.  (Id., pp. 2-5). The system includes four sequential steps that the party seeking to develop the market must

---

[1] The parties previously have resolved the claims in the Complaint that relate to the Houston market.

complete before the market becomes a "New Restricted Market" under the Reorg Agreement.

(Id.).

First, the party seeking to develop a market must send a "Development Notice."  (Id., p. 3).  The Reorg Agreement describes that requirement as follows:

> i. A party (the "Developing Party") seeking to develop into a Market to be Developed and to designate such Market as a New Restricted Market (the "Designated Market") shall send written notice (a "Development Notice") by Certified Mail to the principal address of the other party (the "Other Party") of its intent to designate such Market.  The Development Notice must be in the form of the letter attached as <u>Exhibit D</u>.  The date of the Development Notice (the "Notice Date") shall be deemed the date of receipt by the Other Party, as evidenced by the delivery receipt. The Developing Party shall have twelve months after the Notice Date (the "Development Period") to complete the requirements set forth herein to convert the Designated Market to a New Restricted Market for the Developing Party.

(Id.).

Second, the developing party must send a "four-month notice."  (Id.).   The Reorg Agreement describes that requirement as follows:

> ii. On or prior to the date occurring four months after the Notice Date (the "4 Month Date"), the Developing Party must have obtained capital funds in the amount of at least $50,000 for use in developing the Designated Market (the "Capital Commitment Requirement").  In addition, on or prior to the 4 Month Date, the Developing Party must obtain and establish a $200,000 approved line of credit with a window manufacturer/distributor approved by the parties (e.g., Alside) (the "Supplier") for use in the Designated Market (the "Manufacturer Credit Line Requirement").
>
> iii. Within five days after the 4 Month Date, the Developing Party shall send written notice (a "4 Month Notice") by Certified Mail to the principal address of the Other Party certifying that the Developing Party has satisfied the Capital Commitment Requirement and the Manufacturer Credit Line Requirement for a specific Designated Market on or prior to the applicable 4 Month Date.  The date of the 4 Month Notice (the "4 Month Notice Date") shall be deemed the date of receipt by the Other Party, as evidenced by the delivery receipt.  If the 4 Month Notice Date is more than five days after the 4 Month Date, or if no 4 Month Notice is timely delivered with respect to a Designated Market, it shall be deemed a failure by the Developing Party to satisfy the Designated Market Conditions and such a Designated Market will be redesignated as a Market to be Developed and

>the Developing Party is prohibited from providing a Development Notice for such former Designated Market for a period of 12 months after the 4 Month Date.

(Id.).

Third, the developing party must achieve the substantial business requirement on or prior to the expiration of the twelve-month development period. (Id.).

Fourth and finally, the developing party must send a written "Satisfaction Notice" showing it has met certain requirements prior to the expiration of the twelve-month development period. (Id., p. 4). The failure to do so means that the market becomes a market to be developed, and the developing party is prohibited from providing a development notice for that formerly designated market for a period of twelve months after the expiration of the expired Challenge Period. (Id., p. 5). The Challenge Period is the period after the notice date and until 30 days after the expiration of the Development Period during which the other party may challenge the developing party's four-month notice, the satisfaction notice, or the satisfaction of any of the designated market requirements, or otherwise inquire into the satisfaction of the same. (Id., p. 4).

While the Reorg Agreement provides that the parties are to cooperate in the fulfillment of the Reorg Agreement and are to do things that may reasonably be requested by the other party to more effectively consummate or document the transactions contemplated therein (Id., p. 6), their conduct is, more often than not, dictated by mutual distrust and past discord.

### B. The Salt Lake City Market

The evidence of record contains a letter dated December 11, 2013 from Defendant to Plaintiff regarding Defendant's intent to develop the Salt Lake City market. (DX2). The address line of the letter indicates it was to be sent by certified mail to 11644 North Michigan Road in Zionsville, Indiana. (Id.). On December 12, 2013, Defendant's counsel sent that letter to

Plaintiff by certified mail. (DX3; DX4; DX5). According to the United States Postal Service ("USPS") tracking information, the USPS attempted to deliver Defendant's letter to Plaintiff on December 14, 2013 (a Saturday), but the business was closed. (DX5).[2] According to the Postmaster of the Zionsville, Indiana post office, the standard policy for delivery of certified mail is to leave a peach-colored notice when delivery first is attempted but the recipient is not available. (DX1). The Postmaster further averred that the post office's standard policy is not to re-deliver the letter but rather to leave a peach-colored notice again on the fifth business day after the first delivery attempt, which in this case would have been December 20, 2013 during the Christmas holiday season. (DX1). The second notice attempt is not documented on the certified mail tracking information, and there is no direct evidence of the delivery of the peach-colored notice. (DX1; DX5). The representatives of Plaintiff testified that they did not receive and/or were not aware of any peach-colored notice being left on either occasion. Generally, the parcel is returned to sender if it is not picked up by the recipient by the end of the fifteenth business day after the first delivery attempt. (DX1). In this case, the tracking page indicates that Defendant's letter was sent out from the Zionsville, Indiana post office for return to sender on December 28, 2013. (DX5). According to the tracking information, Defendant's letter was "delivered" back to sender after several attempts (DX5), but the postal notations on the return envelope (DX3) are inconsistent with that office's own tracking information (DX5).

The envelope of the notice letter indicates it was returned as "unclaimed" by Plaintiff. (DX3). As such, no signed delivery receipt for the notice letter by Plaintiff has been presented as evidence. Paul Lewis, Michael Foit, and Heather Stevens testified on behalf of Plaintiff that they never refused any delivery from Defendant or his counsel.

---

[2] Heather Stevens testified for Plaintiff that the business indeed is closed on Saturdays.

4

Defendant testified that he believed he had complied with the terms of the Reorg Agreement when his counsel, at Defendant's request, sent the development letter via certified mail to Plaintiff. Defendant believed everything was in order.

During that process, Defendant's counsel also sent email correspondence to Plaintiff's counsel regarding Defendant's satisfaction of its financial obligations for the Salt Lake City market in accordance with section 3(d)(iii) of the Reorganization Agreement (the four-month notice provision). (PX2; PX3). That email correspondence was sent on December 17, 2013. (PX3). Email correspondence is not, however, the method of delivery required by the Reorg Agreement.[3]

Between January 2014 and May 2014, Plaintiff sent several letters to Defendant at various addresses in Texas. (PX10). Some of those letters were returned to sender as "unclaimed" and indicated that the letter had been "refused." (Id.). None of those letters were mailed to Defendant's principal place of business.

On March 14, 2014, Defendant, in accordance with the terms of the Reorg Agreement, sent via certified mail to Plaintiff the letter dated December 17, 2013 that previously had been sent via email to Plaintiff's counsel. (PX2). That letter was delivered to Plaintiff on March 17, 2014. (PX2). Testimony from Plaintiff's witnesses indicates the receipt of this letter.

Thereafter, on May 5, 2014, Plaintiff sent Defendant a letter designating Salt Lake City as a new market in accordance with section 3(d) of the Reorg Agreement (i.e., a development notice). (PX4). Plaintiff obtained a signed certified mail receipt for delivery of the letter to Energy One at 10409 Gulfdale Street, San Antonio, Texas and to Plaintiff's counsel, which are

---

[3] There is no evidence in the record that supports the routing heading on the December 17, 2013 letter describing delivery by Certified Mail in December 2013.

shown by the USPS tracking information to have been delivered on May 12, 2014 and May 9, 2014, respectively. (PX5).

Following the receipt of the May 5, 2014 letter, Plaintiff's counsel and Defendant's counsel exchanged letters and email correspondence concerning the Salt Lake City market. (PX 6-8; DX9-12). In those exchanges, Defendant's counsel indicated to Plaintiff's counsel that his client had satisfied the requirements of the Reorg Agreement up to that point for the Salt Lake City market, and Plaintiff's counsel disagreed. (PX 6-9; DX8-12). Plaintiff's counsel requested the certified mail delivery receipt for Defendant's development notice for Salt Lake City, which Defendant did not produce. (PX 6-9; DX8-12). Defendant's counsel instead requested a reciprocal exchange of certified mail delivery receipts for various markets unrelated to the present lawsuit. (PX 6-9; DX8-12).

## II.     BREACH OF CONTRACT CLAIM

To prove a breach of contract under Ohio law, the following elements must be established: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. *Samadder v. DMF of Ohio, Inc.*, 798 N.E.2d 1141, 1147 (Ohio App. 2003).[4]

The first element is satisfied here. The Reorg Agreement was the subject of protracted negotiations between the parties, and has been the subject of many disagreements between the parties. The parties do not dispute its validity.

The second and third elements are the central issues in this action. As will be explained, the Court finds Plaintiff has satisfied both elements because Defendant failed to fulfill its obligations under the Reorg Agreement and continues to compete with Plaintiff in that market

---

[4] The Reorg Agreement contains a provision indicating that it is to be construed and enforced in accordance with Ohio law. (PX1, p. 6).

despite that failure and Plaintiff's subsequent fulfillment of those obligations. Although the evidence shows that Defendant sent a letter which purportedly was the development notice to Plaintiff in December 2013 via certified mail, there is, much to Mr. McCain's dismay and surprise, no evidence that Defendant obtained a delivery receipt for the development notice as required by the Reorg Agreement so as to trigger the twelve-month development period.[5] The Reorg Agreement places the burden on the sender to obtain that delivery receipt. Defendant's failure to do so is decisive here.

While Defendant urges the Court to deem a deliberate refusal to accept certified mail as receipt under the Reorg Agreement, the Court need not reach that issue here as there is no evidence of a deliberate refusal by Plaintiff. The only evidence in the record are the USPS's tracking information that shows that the post office attempted delivery on a Saturday when the business was closed and an affidavit indicating there may have been an undocumented attempt at notice five business days later near the Christmas holiday. This assumes the post office followed its standard operating procedure, of which there is no direct evidence. Further, the return envelope for the development notice letter indicates it was "unclaimed" without any indication that it was "refused." Of additional import is the fact that once the letter purportedly containing the development notice was returned, Defendant never made any additional attempt to ensure that Plaintiff was aware of the development notice. There is no evidence that Defendant re-sent the development notice by certified mail to Plaintiff. Nor is there any evidence that Defendant informed Plaintiff—by email, regular mail, or otherwise–of its effort to provide the development notice by certified mail. Plaintiff's counsel averred that he never received such correspondence from Defendant even though he was shown as a "cc" on the December 11, 2013 letter. To be

---

[5] Plaintiff posits that the letter may not even have contained the development notice, as Plaintiff has received letters containing nothing but blank pages from Defendant or his counsel in the past. (*See* PX12).

sure, Defendant emailed a copy of its four-month notice for Salt Lake City to Plaintiff's counsel on December 17, 2013, but that email did not comply with the certified mail requirement in the Reorg Agreement. That four-month notice was not officially delivered in accordance with the terms of the Reorg Agreement until March 17, 2014. Although Plaintiff was aware of Defendant's attempt to enter into the Salt Lake City market since December 2013 (i.e., the emailed four-month notice), and clearly since March 2014 (i.e., the four-month notice sent by certified mail), it took no action until after it properly sent its own development notice on May 5, 2014. While this may be a technical "gotcha", that has been the history of the parties and such gamesmanship is likely to continue into the future. The Court thus will not disturb the contractual obligations set forth in the Reorg Agreement absent an agreement of the parties. Given that the Reorg Agreement places the burden on the sender to satisfy its obligations in regards to the certified mail delivery receipt and Defendant did not satisfy that burden here, Plaintiff's subsequent development notice for the Salt Lake City market that was sent and received in accordance with the terms of the Reorg Agreement was valid and effective. Plaintiff thus has satisfied the second and third element of the breach of contract claim.

As for the fourth element, Plaintiff has shown that Defendant's continued operation in the Salt Lake City market has precluded it from receiving the benefits bargained for in the Reorg Agreement, namely the certain rights of exclusivity during the development period. Plaintiff further has shown that the have a licensee ready and willing to enter into the Salt Lake City market. Defendant has not shown otherwise.

Accordingly, the Court rules in favor of Plaintiff on the breach of contract claim relating to the Salt Lake City market.

### III. **DECLARATORY JUDGMENT**

The Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). "Any such declaration shall have the force and effect of a final judgment or decree . . . ." *Id.*

Consistent with the foregoing analysis, the Court hereby declares that Plaintiff has validly and effectively converted the Salt Lake City market into a Designated Market in accordance with paragraph 3 of the Reorg Agreement and is entitled to the exclusivity in that market as provided for in that paragraph. As such, Defendant is required to abstain from competing in the Salt Lake City market in accordance with paragraph 3 of the Reorg Agreement.

## IV. FINAL JUDGMENT

Consistent with the foregoing, the Court hereby finds in favor of Plaintiff on the breach of contract claim and the declaratory judgment claim relating to the Salt Lake City market, thereby resolving all pending claims in this matter. The twelve-month development period for Plaintiff as set forth in paragraph 3 of the Reorg Agreement shall begin to run as of the date of entry of this Order.

**IT IS SO ORDERED.**

s/Michael R. Barrett  
JUDGE MICHAEL R. BARRETT  
UNITED STATES DISTRICT COURT